FILED
 2014 May-29 PM 03:52
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| STANLEY R. CHRISTIAN, et al., | ) |
| Plaintiffs, | ) |
| vs. | ) 7:13-CV-0027-LSC |
| COUNTRY MUTUAL INSURANCE COMPANY, et al., | ) |
| Defendants. | ) |

MEMORANDUM OF OPINION

Stanley R. Christian and his wife Nancy K. Jones-Christian (collectively, "Plaintiffs") brought this action against their insurance company and a group of engineers and adjusters after their home was damaged by a tornado on April 27, 2011. The only Defendant that remains in the action is Country Mutual Insurance Company ("CMIC"), the successor in interest to Plaintiffs' original home insurer, Cotton States Mutual Insurance Company ("Cotton States"). Before the Court is CMIC's motion for partial summary judgment. (Doc. 36.) For the reasons stated below, the motion is due to be granted in part and denied in part.

I. Factual Background

Plaintiffs own a home in Cottondale, Alabama, which they insured through

CMIC.[1] A tornado struck the area on April 27, 2011, damaging the home and causing a tree to fall on the carport. Plaintiffs submitted a claim to CMIC for the damage to the home.

After the house was damaged, Plaintiffs lived in it for about two weeks. They used a generator during this time, and were told not to have their power turned back on because the wires in the house had been stretched. It became unbearable to live in the house without air conditioning. Since moving out of the house at issue, Plaintiffs have lived in a camp house in Moundville, Alabama.

The first adjuster to examine Plaintiffs' home was Michael Long ("Long") of Crawford and Company on May 2, 2011. He told Stanley Christian that the amount of damage was greater than he was authorized to adjust. Long also told Plaintiffs that they needed to have an engineer look at the house. Plaintiffs then retained Al Cabaniss ("Cabaniss"), an engineer who performed an inspection on May 10, 2011. Stanley Christian and Jeff Englebert ("Englebert"), the builder of Plaintiffs' house, were present for this inspection. On May 18, 2011, Brian Brady ("Brady"), a CMIC claims representative who had been assigned to Plaintiffs' claim, brought an engineer named Robert Edmondson ("Edmondson") to inspect the home. Stanley Christian testified

---

[1] The parties use CMIC to refer to both the current defendant and its predecessor in interest, Cotton States, and the Court will do the same.

that Edmondson did a "pretty good job" of inspecting the house in a thorough, professional manner. (Doc. 37-1 at 82.)

On May 20, 2011, before either Cabaniss or Edmondson issued the reports of their inspections, Brady submitted a "Request for Authority" in the amount of $50,000. The parties dispute the meaning of this request. Plaintiffs point out that CMIC's 30(b)(6) representative, Bradley McLaughlin, characterized the request as the maximum amount that would be needed to cover Plaintiffs' claims, regardless of the details of the engineering report. CMIC notes, however, that McLaughlin also stated that the request could have been resubmitted if the engineer had found that all of the damage came from the tornado.

On May 21, 2011, Brady offered Plaintiffs the cash value of the damage to the carport, a retaining wall, and a portion of the roof framing. Stanley Christian asked him to delay payment until the submission of the engineering reports. Cabaniss and Edmondson came to very different conclusions in their reports. Cabaniss believed that the upper level house had shifted approximately two inches on the frame, and that most of the brick and framing needed to be replaced. He concluded that it would be more economically efficient to rebuild the house on the basement slab. Edmondson, on the other hand, determined that much of the damage outside the carport area was caused not by the tornado, but by settlement of the house.

Using Edmondson's report as a guide, CMIC issued Plaintiffs a check for $32,302.89 on June 22, 2011. Five days later, Christian requested a reinspection. Although CMIC sent out a new adjuster, the reinspection of the premises did not occur until December 18, 2011. During the intervening period, Cabaniss prepared a report that reiterated his conclusions, and Plaintiffs also hired Ron Martin ("Martin") to prepare a third engineer's opinion. Martin concluded that all of the damage at issue was caused by the tornado.

After reinspecting the house, Edmondson wrote a new report that addressed the issues raised by Martin and Cabaniss, concluding again that the damage outside the carport area was caused by settlement rather than wind. CMIC relied on this report in denying coverage for this damage. Both Martin and Edmondson later issued further reports in line with their first conclusions. The parties agree that settlement damage is not covered by the policy.

Although some contents coverage and Alternative Living Expenses ("ALE") payments have been paid, the parties dispute whether further payments are due. Plaintiffs claim additional ALE benefits incurred while living at their camp house. CMIC contends that ALE expenses incurred after February 29, 2012 are not reimbursable. It also argues that Plaintiffs' failed to mitigate their damages with respect to contents claims for items in the basement of the home. Plaintiffs have not

repaired their home or moved back into it. Finally, Plaintiffs also seek damages for mental anguish and distress caused by the damage to their home. Plaintiffs filed suit in the Circuit Court of Tuscaloosa County on December 6, 2012, and Defendants properly removed the case to this Court.

II. Standard of Review

Summary judgment is proper " if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment " always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) " requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions,

answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

III. Discussion

CMIC moves for summary judgment on Plaintiffs' bad faith claim. In addition, CMIC seeks summary judgment on the portion of Plaintiffs' breach of contract claim predicated on contents coverage and ALE benefits. Finally, CMIC also seeks to preclude damages for mental anguish on the breach of contract claim.

A. Bad Faith

To survive summary judgment on a bad faith claim under Alabama law, a Plaintiff must show substantial evidence of five elements: "(a) an insurance contract between the parties and a breach thereof by the defendant; (b) an intentional refusal to pay the insured's claim; (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason); (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason; (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must

prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." *State Farm Fire and Cas. Co. v. Brechbill*, 2013 WL 5394444 at *8 (Ala. Sept. 27, 2013).

The *Brechbill* Court made it clear that bad faith exists as a single tort, and that there are two potential methods to prove such a claim. *Id.* at *8-*9. The "normal" method of proving the claim requires not only that the plaintiff prove the first four elements, but also that the underlying breach of contract claim be so strong that the plaintiff is entitled to a preverdict judgment as a matter of law. *Shelter Mut. Ins. Co. v. Barton*, 822 So. 2d 1149, 1155 (Ala. 2001). Here, Plaintiffs do not contend that they are entitled to judgment as a matter of law on the breach of contract claim. Therefore, they seek to prove the tort of bad faith through the "abnormal" method, which does not require such a preverdict judgment. *White v. State Farm Fire & Cas. Co.*, 953 So. 2d 340, 348 (Ala. 2006).

In order to prove the abnormal case, the plaintiff must show that the insurer (1) intentionally or recklessly failed to investigate the plaintiff's claim; (2) intentionally or recklessly failed to properly subject the plaintiff's claim to a cognitive evaluation or review; (3) created its own debatable reason for denying the plaintiff's claim; or (4) relied on an ambiguous portion of the policy as a lawful basis to deny the plaintiff's claim." *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 306-07. In addition to

proving one of these four elements, however, the plaintiff must also demonstrate that the insurer lacked a debatable reason to deny the claim. *Brechbill*, 2013 WL 5394444 at *9. Failure to prove this element is fatal to the claim, because "[o]f course, if a lawful basis for denial actually exists, the insurer, as a matter of law, cannot be held liable in an action based upon the tort of bad faith." *Gulf Atl. Life Ins. Co. v. Barnes,* 405 So. 2d 916, 924 (Ala. 1981).

Here, the Edmondson engineering reports gave State Farm a debatable reason to deny the claim. *See National Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 185 (Ala. 1982) (finding that investigative report gave insurer "ample debatable reason" to deny claim). State Farm requested three separate reports from its engineer, and these reports found that significant portions of the damage to the house were not caused by the tornado. In addition, State Farm's engineer considered reports made by independent engineers retained by Plaintiffs and even reinspected the house in light of their findings. Although Plaintiffs dispute Edmondson's conclusions, Stanley Christian conceded in deposition that the engineer did a thorough inspection, and Plaintiffs do not contend that he manufactured or planted evidence to defeat the claim. *See Adams v. Auto-Owners Ins. Co.*, 655 So. 2d 969, 971-72 (Ala. 1995). Nor do Plaintiffs claim that the damage should have been covered if it was not caused by wind; both parties agree that State Farm had no obligation to pay for damage caused by settling,

normal wear and tear, or defective workmanship. Thus, once it had obtained the Edmondson reports, State Farm had a debatable reason for its partial denial of Plaintiffs' claim.

Plaintiffs, however, argue that CMIC committed bad faith by denying the claim before it received Edmondson's first engineering report. An insurance company's decision to deny a claim must be based on the information before it at the time. *Aetna Life Ins. Co. v. Lavoie*, 505 So. 2d 1050, 1053 (Ala. 1987). Before Edmondson's report was issued, CMIC adjuster Brian Brady filed a Request for Authority for $50,000 on May 18, 2011. Although it was possible for Brady to ask for more money if the engineering report had concluded that the whole house suffered tornado damage, this request would not cover the total reconstruction of Plaintiffs' home recommended by Al Cabaniss. On May 21, 2011, Brady offered Plaintiffs the actual cash value of the undisputed repairs to the carport and roof framing ("the carport damage"). Stanley Christian then asked CMIC to wait until it received the engineering reports to issue payment. Plaintiffs' expert Gary Augustine opines that the request for authority and offer to repair the carport damage together mean that CMIC's denial of the Christians' claim for total loss of the home occurred on May 20 or 21, 2011.[2]

---

[2] CMIC has filed a motion to disqualify Mr. Augustine. (Doc. 43). The Court does not rule on this motion herein, but examines Mr. Augustine's testimony in light of the fact that only evidence that can be reduced to admissible form may be considered on summary judgment. *Kidd*

It is not fully clear whether Plaintiffs argue that these actions constituted an express denial or a constructive denial. However, they provide no argument as to how the Request for Authority, which was not communicated to Plaintiffs, and the offer to pay for a portion of the damage can constitute an express denial of the claim for the rest of the house. Augustine characterized the actions as a constructive denial in his deposition. He did not, however, opine concerning the legal standard of what constitutes a constructive denial in Alabama. Alabama law specifically provides two ways for a Plaintiff to demonstrate a constructive denial: "(1) by showing that the passage of time is so great that the delay alone creates a denial; or (2) by showing sufficient delay in payment coupled with some wrongful intent by the insurance company." *Congress Life Ins. Co. v. Barstow*, 799 So. 2d 931, 938 (Ala. 2001).

Either of these methods requires a showing of delay, which Plaintiffs cannot meet in this case. Plaintiffs' home was damaged on April 27, 2011, and the supposed constructive denial came less than a month later, within three days of the first engineering inspection of the home. Plaintiffs make no argument that this brief delay was unreasonable. In *Barstow*, the Alabama Supreme Court held that a six week "passage of time, by itself, is not so great that it amounts to a denial." *Id.; see also Ins.*

---

*v. Mando American Corp.*, 731 F.3d 1196, 1207 (11th Cir. 2013).

*Co. Of N. Amer. v. Citizensbank of Thomasville,* 491 So. 2d 880, 883 (Ala. 1986) (finding constructive denial at the end of 24-month period). The delay between the storm damage on April 27, 2011, and the receipt of Edmondson's report on June 7, 2011, is simply insufficient to constitute a constructive denial under Alabama law. No reasonable jury could find that CMIC denied Plaintiffs' claim without a debatable reason to do so, making summary judgment on the bad faith claim proper.

B. ALE and Contents Claims

Plaintiffs bring breach of contract claims regarding the policy's contents and Additional Living Expenses coverages. A breach of contract claim demands proof of the following elements: (1) a valid contract binding the parties; (2) Plaintiffs' performance under the contract; (3) Defendant's nonperformance; and (4) damages. *Barstow,* 799 So. 2d at 937. The second and third element appear to be at issue in this case. CMIC paid some ALE and contents benefits, but additional claims remain disputed.

Plaintiffs sent three letters to CMIC in April of 2012 regarding additional living expenses and contents damage. The letters included specific calculations and receipts for certain living expenses, and generally described "everything in the basement of the home" as being ruined by mildew. CMIC moves for summary judgment on these claims. CMIC states that it has paid all the ALE claims covered by the policy but does

not explain why any of the receipts submitted with these letters should not be paid.[3] Thus, CMIC has failed to meet its burden of showing the Court that it is entitled to judgment as a matter of law on this issue. Summary judgment on the ALE claim is due to be denied.

CMIC also argues that it paid all of Plaintiffs' contents claims. In deposition, Stanley Christian acknowledged that he submitted some claims to CMIC and that they were paid. He does not state that all his claims were paid. Plaintiffs now claim that mold and mildew ruined objects that were not damaged in the original tornado event. CMIC, while denying these claims, does not appear to argue that these items are not covered by the policy. Rather they claim that a storage shed would have been provided for these items if Plaintiffs had asked for one. A genuine factual dispute exists as to whether Plaintiffs could and should have mitigated their damages to the basement content. Therefore, summary judgment on the contents claim is due to be denied.

C. Mental Anguish Damages

Alabama law allows a plaintiff to recover for mental anguish damages in a breach of contract action when "the contractual duties imposed by this contract are so coupled with matters of mental solicitude . . . that a breach of that duty will necessarily

---

[3] In its reply brief, CMIC states that the ALE claim is due to be limited to the receipts submitted in the April 24 letter, but makes no argument as to why this is the case. (Doc. 44 at 17).

or reasonably result in mental anguish." *Ind. Fire Ins. Co. v. Lunsford*, 621 So. 2d 977, 979 (Ala. 1993). A contract to build or insure a home can meet this standard. *Id.*; *B & M Homes Inc. v. Hogan*, 376 So. 2d 667, 671 (Ala. 1979). To recover damages for mental anguish, the Plaintiff must demonstrate that the breach of the contract could "reasonably be seen to affect the solicitude and well-being" of the contracting party. *Orkin Exterminating Co., Inc. v. Donavan*, 519 So. 2d 1330, 1333 (Ala. 1988).

The Alabama Supreme Court has never required that the breach render the house uninhabitable, though it did note that a contract for termite protection "affects the habitability of a house." *Id.* A contract for home insurance can also affect habitability, and a factual dispute exists over whether the damage in this case affected the home's habitability. Furthermore, in *Lunsford*, the plaintiffs recovered mental anguish damages after a windstorm destroyed an awning, with no indication that this damage rendered the home uninhabitable. 621 So. 2d at 979. In this case, a reasonable jury could find a breach of contract by CMIC that affected Plaintiffs' "solicitude and well being." *Donavan*, 519 So. 2d at 1333. Therefore, summary judgment is inappropriate and due to be denied.

IV. Conclusion

Because Plaintiffs cannot demonstrate the absence of a debatable reason for CMIC to deny their claim, summary judgment is due to be granted on their bad faith

claim. Summary judgment is due to be denied on Plaintiffs' claims for ALE and contents coverage, as well as their claim for mental anguish damages. A separate order will be entered.

Done this 29th day of May 2014.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
174310